PETER DAVID WAGNER
11512 Sunny Creek Lane
Manor, Texas 78653
Telephone: 512.962 9351

FILED

JUN 6 2022

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

PETER DAVID WAGNER

Plaintiff,

vs.

BBVA BANK

Defendant.

Case No.: 1:22 cv 00680 RP

COMPLAINT

DEMAND FOR JURY TRIAL

# COMPLAINT FOR DAMAGES

## I.   INTRODUCTION

1.  Plaintiff brings this action against Defendant BBVA BANK., based upon the claim that Defendant has failed to comply with the statutory requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, ('FCRA" or the "Act"), by failing to provide notice to the Credit Reporting Agencies (CRAs) that derogatory item were disputed by consumer; by failing to report to credit reporting agencies that certain late payments had been made by consumer resolving outstanding those debt service payments; by failing to investigate disputed items reported to them by the credit reporting agencies and by failing to report to consumer that derogatory information were made to the credit reporting

agencies regarding his credit, (early warning signal). This conduct is clearly proscribed by the Act and is subject to statutory penalties for each violation.

2. The digitalization of our society has resulted in an exponential increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether used by businesses, banks, the Internal Revenue Service, or other institutions, allows individual consumer information to flow directly and instantaneously to requesting parties. While timely distribution of information has obvious advantages and may provide faster and better decision-making by its recipients, like banks, nonetheless all members of society should benefit from this convenience and efficiency as well as be protected from potential inaccuracies, glitches or intentional abuses of such lightning fast digital flow of information.

3. The FCRAs wise institutions of statutory penalties was prescient insofar as information flow has readily become subject to mishandling, misuse, and maluse. Individual consumers have concomitantly been subjected to substantial damage, both emotional and economic, whenever inaccurate, false, or fraudulently misdirected information is disseminated and/or obtained about them. In fact, Equifax Information Services, LLC, expressly acknowledges the potential for misuse and resulting damage every time it solicits its credit monitoring service to a consumer.

4. As recently as January, 2022, the CFPB release a detailed investigation, revealing the bureaus, in the past 2 years, have gained relief, for less than 2% of all consumer complaints, *down* from the dismal 25% reported covered complaints in 2019.

5. Credit Reporting Agencies sell to ready paying subscribers (*i.e.,* banks, retailers, landlords, lenders, potential employers, and similar interested parties) information, commonly called "consumer reports" concerning individuals who may be applying for retail credit, such as for a car loan, credit cards, mortgage loans and the like.

6. Since 1970, when Congress enacted the Fair Credit Reporting Act, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum

possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

7.  One of the primary purposes in requiring CRA's to assure maximum possible accuracy of consumer information is to ensure the stability of our banking system:

The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. (*See* 15 U.S.C. § 1681(a)(1).7).

8.  The preservation of one's good name is at the heart of the FCRA's purposes:

"[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.... As Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed. Bryant v. TRW, Inc.,* 689 F.2d 72, 79 (6th Cir. 1982) [QUOTING 116 Cong. Rec. 36570 (1970)]" /emphasis added/.

9.  To further the primary goal of greater accuracy, the FCRA has also required CRAs and "furnishers" of credit information, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

10.  This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff, PETER WAGNER against BBVA USA., for their intentional, willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## II.  JURISDICTION AND VENUE

COMPLAINT: WAGNER v. BBVA USA

**11.** This Court has federal question jurisdiction because this case arises out of violation of federal law pursuant to 18 U.S.C. § 1962.

**12.** Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within the judicial district of this court; (ii) the conduct complained of herein occurred within this judicial district.

### III.  PARTIES

**13.** Plaintiff PETER WAGNER, ("Wagner") is an individual residing in Travis County, State of Texas. Plaintiff is a businessman and prior to the acts of Plaintiff, a holder of a good financial reputation and credit rating.

**14.** Defendant BBVA USA is a corporation organized in the State of Delaware, with its main office in DECATUR, ALABAMA. BBVA USA is authorized to do business and is doing business in the State of Texas with its principal place of business, located at and headquartered at 1520 ST S, BIRMINGHAM, AL. yet is conducting business at 5720 Cameron Rd, Austin 78723, County of Bexar, State of Texas. BBVA USA is a "furnisher" as that term is defined under the Act. Defendant BBVA USA is a direct participant in the wrongful and malicious acts in the transaction of the subject credit reporting herein in violation of the Act.

### IV.  FACTUAL ALLEGATIONS

**15.** Peter D. Wagner notices said court, of his otherwise pristine credit record, the only negative mark, on the # CRA agencies, Experian, Equifax, Transunion, is attributed to BBVA USA.

**16.** On or about June 11, 2020, Plaintiff Peter D. Wagner opened said visa account with defendant BBVA USA, correlating acct#463404.

**17.** Plaintiff Peter D. Wagner agreed to put up 500.00, as a said *guarantee* for granting of, (secured card), credit card. Sole purpose, so there wouldn't be any missed payments, that would damage plaintiffs pristine credit record.

COMPLAINT: WAGNER v. BBVA USA

18. Plaintiff Peter D. Wagner arranged to have payments automatically deducted from said business account, so as not to ever be late with defendant BBVA USA/pristine credit record.

19. Timely payments were deducted in order and timely, for at least 6 months.

20. On or about November 25 2020, Plaintiff Peter D. Wagner deposited a 107.00 check, to cover payments, check that was never cashed, and subsequently noticed that Defendant BBVA USA had failed to remit a bill for said month December.

21.

At the end of said month, December 2020, defendant BBVA USA called me to inform me that, I had missed a payment, and they had cancelled my card, placed a negative mark in my credit files, and informed, plaintiff, I owed the balance due immediately.

22. Plaintiff Peter D. Wagner immediately disputed, (verbally), their actions/bad business practices, and was so informed they would, defendant BBVA USA, remove said negative marks from the 3 major CRA,s, and they did.

23. Plaintiff Peter D. Wagner, was shocked and surprised, that while reviewing his personal credit file, in February, 2021, defendant BBVA USA had for some mysterious reason, placed negative mark, *back* into plaintiff personal credit file.

24. Plaintiff Peter D. Wagner made several attempts to remedy this errant/bad faith business practices, by speaking directly with local branch manager, (Miguel Rodriquez), who informed him, that he would have to speak directly to BBVA headquarters.

25. Plaintiff Peter D. Wagner then made several calls directly, to, defendant BBVA USA credit headquarters, on his own and with advisor/business partner/affiant, (Donnie Mayes) BBVA p/n(205) 238 2539, ending up in CEO office, of defendant BBVA USA in attempts to procure a correct balance and accurate reporting, (remedy), of said record to the major credit bureaus/CRA.

26. **Plaintiff** Peter D. Wagner is <u>**informed and believes that**</u> **ALL calls to lenders/creditors are recorded, and will demand such in any court mandated, "discovery", action.**

27. Plaintiff Peter D. Wagner has given "notice', of errant reporting to each of the Credit Reporting Agencies, Experian, Equifax, and Transunion, (April 2021), sent notices of Plaintiff's dispute to Defendant pursuant to Section 1681i(a)(2) of the Act. Defendant, as well as CRA, (credit reporting agencies), was thereafter under a duty to reasonable investigation of Plaintiff's dispute and to modify, delete or block the information if the investigation finds the information is incomplete or inaccurate pursuant to the section 15 U.S.C. 1681s-2(b)(1)(A) and (E).

28.. Plaintiff Peter D. Wagner retained firm of Garcia & associates to enjoin in efforts, letter remitted, March 15, 2021, to correct violations, and errant reporting/predatory business.

29. Plaintiff Peter D. Wagner is informed and believes that Defendant BBVA USA violated 15 U.S.C. 1681s-2(b)(1)(A) by failing to reasonably investigate Plaintiff's dispute after receiving notice from the CRAs, and from himself. Specifically, Plaintiff is informed that Defendant, after receiving notice of Plaintiff's dispute from each CRA, should have discovered from its records, including the letter sent by Plaintiff to Defendant, (certified return receipt P.O. mailings), of inaccuracies in it's billing procedures, and inaccurate credit reporting.

30. Plaintiff Peter D. Wagner is informed and believes that Defendant BBVA USA violated 15 U.S.C. 1681s-2(b)(1)E by failing to discover and remove the derogatory delinquent payments on Plaintiff's credit report. In addition, Defendant BBVA USA should have reported to each CRA that Plaintiff disputed the account information, (nothing noted), (exhibit ).

31. Defendant's BBVA USA failure to correct the above stated inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its *obligation* to refrain from reporting inaccurate information. Consequently, Defendant BBVA USA willfully and recklessly failed to comply with its *duty* to investigate Plaintiff's dispute under 15 U.S.C. 1681(n) and (o).

32. On information and belief, Defendant BBVA USA made either no investigation or recklessly investigated the disputed item, *after* receiving notice of items in dispute by the CRAs and Plaintiff/advisor business partner, affiant.

33. Plaintiff Peter D. Wagner has spent countless hours and expended substantial funds in an effort to get the derogatory reports off of his credit report due to the lack of investigation or shoddy investigation by Defendant BBVA USA.

34. As a direct and proximate result of Defendant's willful and reckless reporting, Plaintiff has suffered great economic pain and suffering, such being turned down for a loan for his dream home, $440,000.00 (actual damages), ( exhibit b), (pain and suffering), and paying higher interest rate, on his current car loan, including but not limited to reviewing credit reports from all three CRAs, continued impairment of his credit score, and such other and further expenses in an amount to be proved at trial.

35. Plaintiff is informed and believed, inaccurate reporting still continues to this day.

36. Wherefore, Plaintiff Peter D. Wagner prays for judgement as set forth below.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## AGAINST DEFENDANT BBVA USA

37. Plaintiff Peter D. Wagner hereby incorporates by reference each and every paragraph stated above.

38. Defendant BBVA USA is a "furnisher" as that term is used in Section 1681*s*-2 of the FCRA and is required to provide notice to a consumer as follows:

(7) Negative Information

1. (A) Notice to Consumer Required

(i) *In general.* **If any financial institution that extends credit and regular and in the ordinary course of business furnishes information to a consumer reporting agency described in section 603(p) furnishes negative information to such an agency regarding credit extended to**

- 7 -

> **customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.**
>
> (ii) *Notice effective for subsequent submissions.* After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 603(p) with respect to the same transaction, extension of credit, account, or customer without providing additional

2. (B) Time of Notice

   > (i) *In general.* The notice required under subparagraph (A) shall be provided to the customer **prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency** described in section 603(p).
   >
   > (ii) *Coordination with new account disclosures.* If the notice is provided to the customer prior to furnishing the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under section 127(a) of the Truth in Lending Act.

3. (C) *Coordination with other disclosures.* The notice required under subparagraph (A) –

   > (i) may be included on or with any notice of default, any billing statement, or any other materials provide to the customer; and
   >
   > (ii) must be clear and conspicuous. *See also 12 CFR Part 222, App B 70 Fed. Reg. 33281 (06/15/04)*

4. (D) Model Disclosure

   > (i) *Duty of Bureau.* The Bureau shall prescribe a brief model disclosure that a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.
   >
   > (ii) *Use of model not required.* No provision of this paragraph may be construed to require a financial institution to use any such model form prescribed by the Bureau.
   >
   > (iii) *Compliance using model.* A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any model form prescribed by the Bureau under this subparagraph, or the financial institution uses any such form and rearranges its format.

   (E) *Use of notice without submitting negative information.* No provision of this paragraph shall be construed as requiring a financial institution that has provided a customer with a notice described in subparagraph (A) to

- 8 -

furnish negative information about the customer to a consumer reporting agency.

(F) Safe harbor. A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph or the financial institution reasonably believed that the institution is prohibited, by law, from contacting the consumer.

(G) *Definitions.* For purposes of this paragraph, the following definitions shall apply:

> (i) The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default
>
> (ii) The terms "customer" and "financial institution" have the same meanings as in section 509 Public Law 106-102. 15 U.S.C. § 1681*s*-2(a)(7).

**(b) Duties of furnishers of information upon notice of dispute**

(1) *In general.* After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
>
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information

COMPLAINT: WAGNER v. BBVA USA

> (2) Deadline
> A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information. /Emphasis Added./

39. Section 1681n of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with *any* requirement" of the Act (*See* 15 U.S.C. §1681n(a)).

40. Section 1681*o* of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act. **BBVA USA failure to provide notices and reports.**

41. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

42. The FCRA provides that if a CRA conducts an investigation of disputed information and cannot confirm that the information is, in fact, accurate, or is unable to *verify* the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15U.S.C. § 1681*i*(a)(5)(A).

43. On multiple occasions in 2020/2021, Plaintiff Peter D. Wagner initiated disputes with each CRA, Equifax, Experian, and Transunion, as well as Defendant BBVA USA and requested that they correct and /or delete specific item in his credit file.

44. Plaintiff Peter D. Wagner specifically advised Defendant BBVA USA on multiple occasions, of the inaccuracy that the derogatory information furnished to the CRAs contained and requested the credit information be corrected accordingly.

45. Either Defendant BBVA USA conducted no investigation of Plaintiff's disputes, or such "investigations" were shoddy at best, as to allow blatantly false and highly damaging information to remain in Plaintiff's credit file.

**46.** By failing to provide investigation regarding Plaintiff's disputes in this regard, BBVA USA willfully and/or negligently violated 15 U.S.C. § 1681*s*-2 with respect to each dispute lodged by Plaintiff Peter D. Wagner.

**47.** As a direct and proximate result of Defendant BBVA USA repeated disregard of its obligation to provide notice/warning to Plaintiff for each derogatory mark reported to a CRA regarding Plaintiff as outlined above, Plaintiff has suffered a significant loss of trust, in the credit reporting system and its accountability to the average consumer.

**48.** As a direct and proximate result of Defendant's BBVA USA willful and/or negligent refusal to conduct a reasonable investigations as mandated by the FCRA and as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due *to denial of credit financing,* loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees and punitive damages, together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

**49.** Upon information and belief, over the past three (3) years, Defendant BBVA USA has engaged in a pattern and practice of refusing to provide notice to consumers of reporting derogatory information to CRAs/*EARLY WARNING NOTICE.*

**50.** Upon information and belief, Defendant BBVA USA has exhibited a pattern and practice of refusing to investigate/correct consumer credit files *after* being noticed about false derogatory information contained in such files, and in failing to provide such corrections to consumers about making derogatory reports, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

**51.** Defendant BBVA USA's pattern of refusal to correct derogatory information as mandated by the FCRA reveals a *conscious and reckless disregard* of the rights of Plaintiff Peter D. Wagner. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for imposition of statutory

COMPLAINT: WAGNER v. BBVA USA

damages, an assessment of punitive damages and attorneys' fees and costs against Defendant, pursuant to 15 U.S.C. § 1681$n$(a)(2).

**WHEREFORE**, Plaintiff Peter D. Wagner prays for judgement against the defendant and for each of the following relief according to proof of trial:

1. Actual damages in an amount of $440,000;
2. Special damages in the amount to be proved by trial;
3. Punitive damages as provided for by 15 U.S.C. § 1681$n$(2);
4. Statutory damages as provided for by 15 U.S.C. § 1681$n$(2); (0)
5. Attorney's Fees, Expert Witness Fees and Costs of suit herein, as provided for by 15 U.S.C. § 1681$n$(3) and 15 U.S.C. § 1681$o$(2); and;
6. For such other and further relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Dated this JUNE 28, 2022

Respectfully submitted,

_____
PETER DAVID WAGNER

COMPLAINT: WAGNER v. BBVA USA

## VERIFICATION AND DEMAND FOR JURY TRIAL

I, the undersigned, am the plaintiff in this matter and make this verification and demand for jury trial; I have read the foregoing complaint, know the contents thereof, and from information and belief, believe the same to be true. I verify under penalty of perjury that the foregoing is true and correct. Furthermore, I demand a jury trial in this action.

DATED: March 23, 2022

_____
PETER DAVID WAGNER

COMPLAINT: WAGNER v. BBVA USA